IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KATHLEEN KILLEGREW                              CV 05-952-MA

       Plaintiff,                          OPINION AND ORDER

v.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

       Defendant.

MERRILL SCHNEIDER
Schneider Law Offices
14415 S.E. Stark St.,
Portland, OR 97233-2153
(503) 255-9092

       Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053

1  - OPINION AND ORDER

FRANCO L. BECIA
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2114

    Attorneys for Defendant

MARSH, Judge.

    Plaintiff filed a civil action for judicial review of the Commissioner's final decision denying her applications for disability insurance benefits and supplemental security income benefits (benefits) under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, respectively.  Plaintiff alleges the Administrative Law Judge (ALJ) erred in finding she is not entitled to benefits.  Plaintiff seeks an order either reversing the Commissioner's decision and remanding the matter for an award of benefits or remanding the matter for the purpose of obtaining the testimony of a vocational expert.  The Commissioner contends her decision is based on substantial evidence and is free from legal error and, therefore, requests the Court to affirm her decision.

    This court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the following reasons, the Court **REVERSES** the final decision of the Commissioner and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

## BACKGROUND

Plaintiff applied for benefits on December 19, 2001, alleging she has been disabled since October 15, 1997.  Her application was denied initially and on reconsideration.  Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on May 6, 2004.  On July 24, 2004, the ALJ found plaintiff is capable of performing her past relevant work and, therefore, is not under a disability.  The ALJ's decision became the final decision of the Commissioner on April 28, 2005, when the Appeals Council denied plaintiff's request for review.

## LEGAL STANDARDS

The initial burden of proof rests on the claimant to establish disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  To meet this burden, a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are

supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

## DISABILITY ANALYSIS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled. Bowen v. Yuckert, 482 U.S.137, 140 (1987). See also 20 C.F.R. § 416.920.

4 - OPINION AND ORDER

The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

Here, at Step One, the ALJ found plaintiff has not engaged in substantial gainful activity since the onset of her alleged disability.  See 20 C.F.R. § 416.920(b).

At Step Two, the ALJ found plaintiff has the severe impairment of "rule out undifferentiated somatoform disorder."[1] 20 C.F.R. § 416.920(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities).

At Step Three, the ALJ found plaintiff's impairment does not meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii) and 416.920(d).  The ALJ found plaintiff has the residual functional capacity to perform light exertion work.  20 C.F.R. §§ 404.1567, 416.967.

At Step Four, the ALJ found plaintiff could perform her past relevant work as a major planned-giving director for the American Heart Association, area manager, and regional secretary.

---

[1] "Undifferentiated Somatoform Disorder is characterized by unexplained physical complaints lasting at least 6 months, that are below the threshold for a diagnosis of Somatization Disorder. DSM-IV, p. 445.

5 - OPINION AND ORDER

20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), and 416.920(f).

Because he found plaintiff was able to perform her past relevant work, the ALJ did not address Step Five and accordingly, found plaintiff is not disabled.

Plaintiff disputes the ALJ's finding and asserts she suffers from Somatoform Disorder and is disabled. Plaintiff asserts the ALJ erred by (1) failing to credit the opinion of treating psychiatrist, Rebecca Ricoy, M.D., (2) failing to credit plaintiff's testimony and the evidence presented by her sister, and (3) failing to obtain vocational testimony.

## DISCUSSION

The issue in this case is whether plaintiff established she is disabled by a severe somatic disorder.

**Plaintiff's Personal History.**

When the ALJ issued his decision, plaintiff was 38 years old. She has one year of college. She last worked in 1997 setting up a major gift-giving program for the American Heart Association in Mississippi. Plaintiff then moved to Portland where her sister lives. Her sister helps her with rent and in exchange, plaintiff takes care of some chores around the house to the extent she is able.

**Medical Evidence.**

Since 1998, Plaintiff has been examined by a number of

6  - OPINION AND ORDER

doctors for multiple recurring complaints, including fatigue, muscle pain, nausea, headaches, dizziness, numbness, deep chest pain, rapid heart rate, vision problems, left eye droop, and gastrointestinal problems.  In general, the parties agree that no doctor has found or diagnosed a specific medical condition or conditions to account for plaintiff's physical symptoms.  No doctor, however, has diagnosed malingering or questioned whether plaintiff was exaggerating her symptoms.[2]

**Treating/Examining Physicians.**

The following doctors either treated plaintiff or examined plaintiff for purposes of treatment and specifically addressed somatic symptoms.

<u>Mary Samuels, M.D. - Endocrinologist</u>.

In October 1998, Dr. Samuels examined plaintiff for her complaints of fatigue, muscle weakness, and dizziness.  Dr. Samuels noted plaintiff seemed to be "a very straightforward patient."  Dr. Samuels "did not get the sense that [plaintiff] had a major psychiatric disorder to explain her multiple symptom complex."

<u>Justin Denny, M.D. - Internist</u>.

In November 1999, Dr. Denny, who had treated plaintiff's neurological symptoms for 15 months, stated plaintiff suffered

---

[2] The ALJ thoroughly set out the medical evidence in his decision and it is not necessary to repeat it in detail.

from depression and he was "considering at this time, the diagnosis of somatization disorder."

<u>Heidi Loganbill, M.D. - Neurologist</u>.

Dr. Loganbill treated plaintiff from November 1999 until June 2002, when she noted that plaintiff "continues to have somatic symptoms [of fatigue and weakness] without any abnormalities on examination."

<u>John G. Nutt M.D.</u>

Dr. Nutt examined plaintiff and concluded that "as have some of her other physicians, [] a somatoform disorder is what most likely lies beneath her complaints."

<u>Rebecca Ricoy M.D. - Psychiatrist</u>.

Dr. Ricoy treated plaintiff on a regular basis from May 2001 until at least November 2004. In May 2001, Dr. Ricoy diagnosed "possible somatization disorder." That diagnosis remained the same until February 2004, when Dr. Ricoy changed it to "somatization disorder" and added "depression" to the diagnosis.

In May 2004, in response to a letter from plaintiff's attorney, Dr. Ricoy acknowledged that plaintiff "suffers from muscle fatigue," has "pseudo neurologic complaints," "continued cognitive complaints," and "a long history of gastrointestinal/ digestive problems." She concurred with the statement that plaintiff "would have a hard time working at a reasonable pace on a consistent basis due to her fatigue and cognitive

8 - OPINION AND ORDER

limitations."  In addition, Dr. Ricoy acknowledged "it would also be realistic that [plaintiff] would miss at least one day of work per week due to her symptoms during an average week."

**Consulting/Examining Physicians.**

The following physicians and psychologists reviewed plaintiff's medical history and/or examined her on behalf of the Commissioner.

<u>Dorothy Anderson, Ph.D. - Psychologist</u>.

On July 1, 2004, Dr. Anderson reviewed plaintiff's medical records on behalf of defendant.  With no elaboration, Dr. Anderson diagnosed non-severe "r/o somatoform disorder," with a "mild" restriction of activities of daily living and "mild" difficulties of maintaining concentration, persistence, or pace.

<u>Chris Arthur, M.D. - Psychiatrist</u>.

In June 2002, Dr. Arthur examined plaintiff on behalf of defendant.  He found plaintiff was "cooperative" with "no flavor of exaggerating symptoms."  Dr. Arthur concluded plaintiff does not meet the diagnosis for "somatization disorder" or "undifferentiated somatization disorder."  He explained that for somatization disorder to be diagnosed, "there has to be multiple unexplained symptoms affecting many organ groups.  Since most of the claimant's symptoms have been explained and given a specific diagnosis, the diagnostic criteria for somatization disorder per say (sic) were not met."  He diagnosed "multiple

9 - OPINION AND ORDER

disorders and complans (sic)."

### Maribeth Kallemeyn, Ph.D. - Psychologist.

In September 2002, Dr. Kallemeyn interviewed and evaluated plaintiff on behalf of defendant. Dr. Kallemeyn noted plaintiff "did not show evidence of malingering memory difficulties" nor was there "evidence of overt exaggeration." By plaintiff's report, her "current daily activities are markedly restricted." Dr. Kallemeyn diagnosed "rule out undifferentiated somatoform disorder."

### Robert Henry, Ph.D. - Psychologist.

In October 2002, Dr. Henry reviewed plaintiff's records and checked a box marked "No Medically Determinable Disorder."

**Plaintiff's Objections to the ALJ's Findings**.

1. <u>Failure to credit Dr. Ricoy's opinion</u>.

In May 2002, approximately 10 months after she began treating plaintiff on a regular basis, Dr. Ricoy concluded plaintiff would not be able "to sustain focused attention sufficiently long to permit completion of tasks." In May 2004, Dr. Ricoy agreed that plaintiff "has marked fatigue, and when she pushes herself to complete her daily tasks she can be down and out for several days afterwards." As noted, Dr. Ricoy determined that plaintiff's symptoms of somatoform disorder would cause her to miss one day of work per week.

"Even if the treating doctor's opinion [including ultimate conclusions] is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing."  Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996)(internal citation omitted).

The ALJ rejected Dr. Ricoy's opinions because they were "inconsistent with the entire evidence of record" and were based "solely on the subjective impressions and/or reliance on the claimant's allegations."  The ALJ noted the opinions of non-examining consulting psychologists Anderson and Henry, who, without explanation, concluded plaintiff had "no medically determinable severe impairment" and, therefore, did not assess plaintiff's residual functional capacity.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. Lester, 81 F.3d at 830.  "Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing reasons' supported by substantial evidence in the record.  Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record."  Reddick v.

11 - OPINION AND ORDER

Chater, 157 F.3d 715, 725 (9th Cir. 1998). (Internal citations omitted).

Here, the ALJ, while rejecting Dr. Ricoy's opinions as to plaintiff's medical condition and ability to work, also did not credit the opinions of the consulting psychologists. Although the ALJ "considered" their findings that plaintiff did not have a medically determinable severe impairment, he gave plaintiff "the benefit of the doubt" and determined she was capable of light work. He reasoned that "[w]hereas there is a rule out mental diagnosis, no mental limitations have been assigned by any medical sources and/or suggested in the evidence."

The issue, however, is not whether plaintiff has mental limitations as a result of a somatoform disorder, it is whether she has unexplained, physical symptoms resulting in physical limitations. In that regard, the record is replete with other treating and examining physicians' reports to the effect that plaintiff has substantial unexplained physical symptoms suggesting either a "somatization" or "somatoform" disorder.[3]

The evidence also is notable for the absence of any suggestion that plaintiff exaggerated her symptoms or was

---

[3] A "somatization disorder" is a "polysymptomatic disorder that begins before age 30 years, extends over a period of years, and is characterized by a combination of pain, gastrointestinal, sexual, and pseudoneurological symptoms. DSM-IV, p. 445. A "somatoform disorder" involves "the presence of physical symptoms that suggest a general medical condition . . . and are not fully explained by a general medical condition." Id.

12 - OPINION AND ORDER

malingering. Dr. Arthur, who examined plaintiff on behalf of the Commissioner, rejected a diagnosis of somatoform disorder based in part on the fact plaintiff had real symptoms such as a drooping left eyelid that would "be very difficult to fake." He stated that he was "inclined to think these are just unexplained symptoms of an underling (sic) medical condition yet to be discovered." Although Dr. Arthur contradicted Dr. Ricoy's diagnosis of somatoform disorder, he did not contradict a finding that plaintiff has physical symptoms. In addition, Dr. Kallemeyn, a psychologist who interviewed and evaluated plaintiff for the Commissioner, also noted there was no evidence of "overt exaggeration."

On this record, I conclude the ALJ erred in failing give clear and convincing reasons for rejecting Dr. Ricoy's opinions.

2. <u>Failure to credit plaintiff's testimony</u>.

The ALJ found plaintiff's testimony regarding her ability to work because of her physical symptoms was not credible. He also found the evidence presented by plaintiff's sister established plaintiff was able to engage in reasonably normal social activities and activities of daily living.

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" (the *Cotton*

13 - OPINION AND ORDER

test).  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)).  See also Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986).  The claimant need not produce objective medical evidence of the symptoms or their severity.  Smolen v. Chater, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the claimant has met the standards set out in the Cotton test and there is no affirmative evidence to suggest the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony regarding the severity of his symptoms.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  See also Smolen, 80 F.3d at 1283.

To determine whether the claimant's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  Id. at 1284 (citations omitted).

    Here, plaintiff testified as follows:

> I have difficulties with my muscles and my stamina.  They really allow me to do tasks for a period of time.  So I can - at very short intervals - can do things.  And then

14 - OPINION AND ORDER

>           what happens is, if I push myself to - on any
>           given day, then it may take a day or so of
>
>           rest after that to heal.  So it's a - something
>           that I've really struggled with here recently and
>           made the decision this is the route I need to
>           take.
>
>                            *  *  *
>
>           They - my muscles will - if I hold something in
>           one position for too long, or stay in one position
>           for too long. they'll have a tendency to freeze
>           up.  If I use them for - I don't know.  Maybe it's
>           just best to give you an example what -  I was
>           taking some Yoga classes to try and strengthen my
>           muscles, which went okay for a period of time.
>           But then, any pose I would get into, my muscles
>           would start to tremor on me, and I would just lose
>           the ability to maintain that position for any
>           period of time.  So its either they freeze up, or
>           they tremor on me.

AR at 429-430.

    The ALJ determined plaintiff was not credible because (1) the medical evidence revealed extensive workup with generally normal findings, (2) she responded well to medication provided within a period of 12 months, (3) her multiple complaints have been generally unexplained, (4) no additional workup has been considered necessary, (5) her sister testified plaintiff engaged in reasonably normal social and daily living activities, and (6) her abilities to concentrate and stay on task do not appear to be significantly impacted.

    The ALJ's reasons for disregarding plaintiff's testimony are not convincing.  The ALJ ignores that plaintiff's claimed

somatoform disorder is based on the fact that many of her physical symptoms are unexplained.  There is nothing in the record to suggest plaintiff does not have physical symptoms, and none of the treating or consulting physicians suggest otherwise. Moreover, there are objective findings such as her facial droop, that Dr. Arthur noted is "very difficult to fake."

In addition, plaintiff's sister did not present evidence, as suggested by the ALJ, that plaintiff engaged in reasonably normal social and daily living activities.  The sister stated that plaintiff "used to be very social, going out very often.  Now she hardly ever goes out as her muscles exhaust so easily." Plaintiff "used to go to charity events, plays, movies, cross-country skiing and downhill skiing, dinners, parties, and although she never liked to, shopping."  As for exercise, plaintiff "used to take yoga classes."  Now, "exercise is done at home where [plaintiff] can break as often as she needs to."  The sister stated "the best example" of plaintiff's illness is for her to "get into a yoga pose (even an easy one) and watch her muscles just give up."  Plaintiff keeps house for her sister to "earn her keep."  She does laundry once every three weeks, vacuums once or twice a month, removes the trash once or twice a week.  "Some months [plaintiff] does a better job than others."

Plaintiff's testimony at the hearing in 2004 regarding her daily activities is consistent with what she told Dr. Kallemeyn

16 - OPINION AND ORDER

in 2002. As noted, Dr. Kallemeyn characterized those activities as "markedly restricted." The ALJ adopted Dr. Kallemeyn's diagnosis of "rule out undifferentiated somatoform disorder" but disregarded her opinion regarding plaintiff's restrictions as to daily living.

On this record, I find the ALJ failed to provide clear and convincing reasons for not crediting plaintiff's testimony regarding her physical limitations.

4.   <u>Failure to obtain vocational testimony</u>.

Plaintiff asserts the ALJ failed to obtain vocational testimony as to plaintiff's ability to work based on her physical and mental limitations established in the record.

The ALJ found plaintiff was able to do light work, including her past relevant work based on his finding that she was able to perform ordinary tasks of daily living. The ALJ made that finding by improperly rejecting plaintiff's testimony.

In light of his finding, the ALJ did not ask a hypothetical question of the vocational expert regarding the availability of jobs based on plaintiff's claimed limitations.

In summary, I find the record does not support the ALJ's finding that plaintiff is able to perform light work, including her past relevant work. I also find, however, that the medical record as to whether plaintiff has a severe somatoform disorder that limits her ability to engage in substantial gainful activity

17 - OPINION AND ORDER

needs to be further developed. Accordingly, I remand the matter to the Commissioner to obtain a further medical opinion on plaintiff's condition from an expert in somatoform disorders, and based on that opinion, to obtain a specific residual functional capacity determination from which a vocational expert can determine whether there are jobs plaintiff can perform.

## CONCLUSION

For these reason, the court **REVERSES** the final decision of the Commissioner and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 16 day of May, 2006.

                                                  /s/ Malcolm F. Marsh  
                                                MALCOLM F. MARSH  
                                                United States District Judge